UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


SURGERY CENTER OF VIERA,
LLC,

      **Plaintiff,**

v.                                **Case No: 6:22-cv-793-PGB-DAB**

UNITEDHEALTHCARE
INSURANCE COMPANY,

      **Defendant.**
_____/

## ORDER

      This cause comes before the Court on Defendant's Motion to Dismiss (Doc. 19 (the "**Motion**")) and Plaintiff's response thereto (Doc. 25). Upon consideration, the Motion is due to be granted in part and denied in part.

## I.    BACKGROUND[1]

      This case flows from a medical billing dispute. Plaintiff Surgery Center of Viera, LLC is a medical provider which served P.M. (the "**Patient-Insured**") for cervicalgia, cervicobrachial syndrome, and cervical radiculopathy. (Doc. 17, ¶¶ 1, 11). After some alternative but ultimately unsuccessful treatments, Plaintiff provided surgical care for the Patient-Insured on September 25, 2018. (*Id.* ¶ 11). The    Patient-Insured    maintained    health    insurance    with    Defendant

---

[1]    This account of the facts comes from the Plaintiff's Second Amended Complaint. (Doc. 17). The Court accepts these well-pled factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

UnitedHealthcare Insurance Company through his employer, and the Patient-Insured provided the relevant insurance plan documentation (the "**Plan**") to Plaintiff to cover his care. (*Id.* ¶¶ 1, 4, 8–9). The Plan's underlying insurance contract is governed by the Employee Retirement Income Security Act ("**ERISA**"). (*Id.* ¶ 20). The Plan provides that payment of benefits will unfold pursuant to a "Reasonable and Customary Charges" analysis. (*Id.* ¶ 26). Prior to surgery, Plaintiff obtained pre-surgery authorization for a medically necessary procedure from Defendant. (*Id.* ¶¶ 10, 11). Moreover, "at all material times," Plaintiff "was the authorized representative of" the Patient-Insured with regard to the Plan as the Patient-Insured assigned his benefits under the Plan to Plaintiff. (*Id.* ¶ 2).

After the conclusion of care for the Patient-Insured, Plaintiff submitted a corresponding claim for $193,348.00 (the "**Claim**") to Defendant as the Plan insurer. (*Id.* ¶ 13). Defendant made a partial payment of $46,164.46 to Plaintiff based on the Claim. (*Id.* ¶¶ 16, 19). Plaintiff requested documentation pursuant to its understanding of ERISA's document production statutory requirements to further understand on what basis its claim payment was adjusted downward, but Defendant did not produce documentation sufficient to obviate Plaintiff's concerns. (*Id.* ¶¶ 18, 21–24).

Plaintiff now brings suit to remedy the partial payment of its Claim. (*Id.* ¶¶ 31–59). However, Plaintiff alleges that Defendant's partial payment of its Claim does not violate the Plan's underlying contractual terms; instead, the partial payment violates a separate repricing agreement for discounted billing rates (the

2

"**Repricing Agreement**"), which non-party Preferred Medical Claim Solutions

("**PMCS**") secured from Plaintiff on behalf of Defendant. (*Id.* ¶¶ 9, 13–16, 27–29,

38, 44–45, 52). At the same time, Plaintiff alleges the "Reasonable and Customary

Charges" analysis "squares with what" the Repricing Agreement established as a

rate of payment. (*Id.* ¶¶ 26–27).

The Repricing Agreement established a pre-set reimbursement rate formula

that would have reduced Plaintiff's Claim to an amount no less than $162,416.80—

at least according to Plaintiff's interpretation of the Repricing Agreement's terms.

(*Id.* ¶¶ 32, 37–39). As such, Plaintiff seeks at least $116,252.34 in compensatory

damages for Defendant's alleged breach of the Repricing Agreement. (*Id.* ¶¶ 32,

41–42).

Plaintiff twice amended its complaint and currently alleges the following

three causes of action in the Second Amended Complaint: breach of contract

(Count I); unjust enrichment (Count II); and quantum meruit (Count III). (Docs.

1, 9, 17). Defendant moved to dismiss the Second Amended Complaint for failure

to state a claim (Doc. 19), and after Plaintiff responded (Doc. 25), this matter is

ripe for review.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the

plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

Defendant puts forward three main arguments in support of the Motion. First, Defendant argues each state-law claim "relates to" the administration of a self-funded health plan and is therefore defensively preempted by ERISA's express preemption provision in 29 U.S.C. § 1144(a). (Doc. 19, pp. 2–15). Second, Defendant contends that, apart from the preemption of Florida state law, Plaintiff has not sufficiently alleged that Defendant breached or was party to the Repricing Agreement. (*Id.* at pp. 15–17). Third, Defendant maintains that, in any event, Plaintiff has failed to state plausible equitable claims for relief against the claims

administrator of an employee-sponsored health insurance plan. (*Id.* at pp. 17–19). The Court addresses each argument in turn.

### A.    Defensive ERISA Preemption

29 U.S.C. § 1144(a) provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter *relate to any* employee benefit plan." (emphasis added). The statutory text "relate to" is "given its broad, common-sense meaning, such that a state law 'relates to' a benefit plan in the normal sense of the phrase—that is, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *see also Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006). "A party's state law claim 'relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay [ERISA] benefits." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (citation omitted). At the same time, conduct independent of an ERISA plan can be "too tenuous, remote, or peripheral" from the plan to be defensively preempted, including some conduct giving rise to medical providers suing plan administrators or their claims administrators. *See Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533–34 (1994) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)); *see also In re Managed Care Litig.*, 595 F. Supp. 2d 1349, 1357 (S.D. Fla. 2009) (noting ERISA does not defensively preempt independent causes of action by medical providers against plan insurers if they arose independently from an ERISA plan.). For example, a medical provider's suit against an insurer can escape ERISA

preemption when there is an independent basis for the claim beyond the ERISA plan such that an insurer's "failure to pay for the medical services violates a *completely different non-ERISA* agreement" which is "*separate and distinct* []" from the ERISA plan." *Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*, 465 F. Supp. 3d 1211, 1222 (M.D. Fla. 2020) (emphasis added).

Here, Plaintiff might be able to allege an independent basis for its state law claims. Namely, the Repricing Agreement allegations, when interpreted in the light most favorable to Plaintiff, may establish an independent basis for suit that is separate and distinct from the Plan. (Doc. 17, ¶¶ 9, 13–16, 27–29, 38, 44–45, 52). Plaintiff further alleges, however, that a "Reasonable and Customary Charges" analysis under the Plan "squares with what" the Repricing Agreement established as a rate of payment. (*Id.* ¶¶ 26–27). If Defendant's alleged underpayment connects to the Plan as it somehow is not a "Reasonable and Customary Charge"—even if one that simply "squares with" the Repricing Agreement—it is unclear to the Court how the Repricing Agreement is "separate and distinct" or "completely different" from the Plan. *UnitedHealthcare*, 465 F. Supp. 3d at 1222; *see also Lordmann*, 32 F.3d at 1533; (Doc. 17, ¶¶ 26–27). Moreover, Plaintiff further alleges that Defendant failed to comply with the "pre-suit remedies process (which such pre-suit mechanisms ERISA designed to try to avoid lawsuits like this)" as Plaintiff attempted to ascertain how Defendant arrived at its adjusted Claim payout amount, so the Court is at a loss to understand why Defendant is both obligated to comply with ERISA's document production requirement due to inquiries

regarding the Claim and yet Plaintiff's cause of action is somehow "separate and distinct" from the ERISA Plan. (Doc. 17, ¶¶ 20–24).  Nevertheless, Plaintiff may be able to clarify this ambiguity by amending the complaint, so Counts I-III are due to be dismissed without prejudice.[2] The Court cautions Plaintiff and its counsel that any re-pled claims must establish a factual basis for its contractual claims which are independent of the Plan. *See In re Managed Care Litig.*, 595 F. Supp. 2d at 1356–57 (finding plaintiff's state law claims were defensively preempted because they necessarily must be read in conjunction with and "have a definite connection with" the ERISA plan's underlying contract).

### B.    Breach of Contract Claim (Count I)

Defendant further moves to dismiss Plaintiff's breach of contract claim for failing to plausibly state a claim on its own terms. (Doc. 19, pp. 15–17).  Under Florida law, a plaintiff must allege: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citation omitted).

---

[2]    The Court once again notes that if Plaintiff's factual theory that third-party vendors secured the Repricing Agreement on behalf of Defendant comes up empty in discovery and also fails in the myriad other similar suits Plaintiff has filed in the Middle District, at some point an inference will arise that Plaintiff's Counsel has violated Rule 11 by failing to conduct a reasonable inquiry under the circumstances to ensure the factual contentions in its pleadings related to the Repricing Agreement would likely have evidentiary support. FED. R. CIV. P. 11(b)(3); *Land v. Chicago Trucker Drivers Union*, 25 F.3d 509, 517–18 (7th Cir. 1994) (noting plaintiffs may not "drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation"); *Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, No: 6:22–cv–127, Doc. 28, at *30 n.9 (M.D. Fla. June 17, 2022). The Court further notes that an email to another attorney within Counsel's prior firm may not be, without more, a reasonable investigation under the circumstances. (*See* Doc. 17-9, p. 3; Doc. 27).

Plaintiff has sufficiently pled all three elements in its complaint, assuming the Repricing Agreement is a separate and distinct agreement from the Plan. Specifically, Plaintiff alleges that: (1) Defendant had an agreement with PMCS in the form of the Repricing Agreement which prescribed a set percentage reimbursement rate for the surgery services provided to the Patient-Insured; (2) PMCS procured these discounted rates from Plaintiff on behalf of its listed partial payers, including Defendant; (3) Defendant breached the Repricing Agreement by not paying the  rate agreed to therein; and (4) Plaintiff suffered damages flowing from the breach. (Doc. 17). When read in the light most favorable to Plaintiff, these allegations allow the Court to draw a reasonable inference that a failure to pay the rate agreed to in the Repricing Agreement constituted a contractual breach. *See Surgery Ctr. of Viera, LLC*, 2020 WL 686026, at *7 ("It is sufficient that Surgery Center alleges in the Complaint and references in its Response that [the plan administrator] had a contractual relationship with PMCS and that PMCS procured discounted rates from Surgery Center on [the plan administrator's] behalf. These allegations, when read in the light most favorable to Surgery Center, are facially plausible.").

Defendant's arguments mostly contest the facts as alleged—namely, Defendant asserts it is not a party to the Repricing Agreement and that the Repricing Agreement is not applicable here because Plaintiff did not submit the Claim to PMCS as required under the Repricing Agreement's terms. (Doc. 19, pp. 15–17). At this procedural stage, the Court must assume Plaintiff's well-pled

8

allegations are true, so this part of Defendant's Motion with respect to Count I must be denied although it is welcome to raise these factual arguments at the appropriate juncture.

### C.    The Equitable Claims (Counts II & III)

"Florida law prescribes four elements for quantum meruit and unjust enrichment claims." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (citing *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (en banc); *see also Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1194 (11th Cir. 2009)). These four elements are: (1) the plaintiff must have conferred a benefit on the defendant; (2) the defendant must have knowledge of the benefit; (3) the defendant must have accepted or retained the benefit; and (4) the circumstances "must be such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Id.* (internal citations omitted).

Defendant principally argues that Plaintiff has not alleged it conferred a direct benefit on it as alleged because the provision of medical services to a patient enrolled in an insurance plan does not confer a benefit on the related insurance claims administrator of an employee-sponsored health plan but instead on the employer. (Doc. 19, pp. 17–19). There is a split of authority on this issue. *See Baycare Health Sys., Inc. v. Med. Sav. Ins. Co.*, No. 8:07-cv-1222, 2008 WL 792061, at *9 (M.D. Fla. Mar. 25, 2008) ("Whether healthcare treatment to insured constitutes a 'direct' benefit to the insurance company, or a benefit at all, is unclear,

and is a source of disagreement in courts within the Middle District of Florida.");
*Surgery Ctr. of Viera, LLC*, 2020 WL 686026, at *8 (M.D. Fla. Feb. 11, 2020)
("Although Defendants rely on several district court opinions that stand for the
proposition that a healthcare provider who provides services to an insured does
not benefit the insurer, it is well-established that this Court is bound only by
decisions of the Eleventh Circuit and the United States Supreme Court. Thus, this
Court finds it is not necessary at this stage of the litigation to allege more than what
Surgery Center has already alleged—that it provided services that allegedly
conferred a benefit, it was not paid the entire balance due for the services, and that
it would be inequitable for Surgery Center to not be paid for the services
rendered."); *Surgery Ctr. of Viera, LLC v. United Healthcare, Inc.*, No. 6:19-cv-
926, Doc. 40, at *40 (M.D. Fla. Mar. 18, 2020) (citing *Baycare* and stating
"[a]lthough this Court is extremely skeptical that discovery will confirm the
conferral of a direct benefit on Defendants, viewing the facts and allegations in the
light most favorable to Plaintiff, [the unjust enrichment and quantum meruit
claims] survive at the motion to dismiss stage."). Ultimately, the Court agrees with
Plaintiff that it should enjoy the benefit of discovery on its claims before the Court
steps in. (Doc. 25, p. 19 n.13). Plaintiff here alleges it "conferred a direct benefit on
Defendant[] by providing [the Patient-Insured] with medical services to which the
insured was entitled under the [Plan]." (Doc. 17, ¶ 51). Plaintiff further alleges
Defendant received the benefits of one of the Patient-Insured tendering their
insurance for coverage, the good health of one of the Patient-Insured, the

minimization of the Patient-Insured's future medical expenses, and so on. (*Id.* ¶ 43). Defendant rejoins that a conferral of benefits upon the Patient-Insured does not confer a benefit upon it as the Plan's claims administrator—if anything, Defendant argues, providing benefits to the Patient-Insured is a cost, not a benefit. (Doc. 19, p. 17–18). The Court questions whether Plaintiff will ever be able to establish the conferral of a direct benefit upon Defendant, but the allegations are at least facially plausible. Accordingly, viewing the complaint in the light most favorable to Plaintiff, Count II and III plausibly state a claim as pled.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Dismiss (Doc. 19) is **GRANTED IN PART** and **DENIED IN PART**;

2.  The Second Amended Complaint (Doc. 17) is **DISMISSED WITHOUT PREJUDICE**;

4.  On or before March 3, 2023, Plaintiff may file a Third Amended Complaint consistent with the directives of this Order, if it believes it can do so in accordance with Rule 11. Failure to timely file a Third Amended Complaint may result in dismissal of this entire action with prejudice without further notice.

**DONE AND ORDERED** in Orlando, Florida on February 17, 2023.

12

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

12