# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SURGERY CENTER OF VIERA, LLC,**

    **Plaintiff,**

v.                                 Case No: 6:22-cv-793-PGB-DAB

**UNITEDHEALTHCARE INSURANCE COMPANY,**

    **Defendant.**

_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Dismiss (Doc. 38 (the "**Motion**")) and Plaintiff's response thereto (Doc. 39). Upon consideration, the Motion is due to be granted.

**I.  BACKGROUND**[1]

This case flows from a medical billing dispute. (Doc. 34). Before outlining the well-pled allegations in the Third Amended Complaint, a review of the procedural history of this case is in order. On April 25, 2022, Plaintiff Surgery Center of Viera, LLC ("**Plaintiff**") brought claims against Defendant UnitedHealthcare Insurance Company ("**Defendant**") and terminated parties

---

[1] This account of the facts comes from the Plaintiff's Second Amended Complaint and the attachments thereto properly incorporated by reference. (Doc. 34). The Court accepts the well-pled, non-conclusory factual allegations therein as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Siemens Corporation and Siemens Corporation Group Insurance Flexible Benefits Program. (Doc. 1).

Plaintiff twice amended its complaint—once as a matter of course and again with Defendant's leave. (Docs. 1, 9, 17). The initial Complaint and the Amended Complaint contained four counts: first, an administrative record claim pursuant to provisions of the Employee Retirement Income Security Act ("**ERISA**"); second, a breach of contract claim; third, an unjust enrichment claim; and fourth, a quantum meruit claim. (Docs. 1, 9). The Second Amended Complaint dropped the Terminated Parties and the ERISA administrative record claim. (Doc. 17). Defendant moved to dismiss the Second Amended Complaint for failure to state a claim arguing, in part, that the claims were preempted by federal law as they "relate to" an underlying ERISA-governed employee benefits plan. (Doc. 19). The Court granted that request in part but provided leave to replead (Doc. 31).

Plaintiff timely filed the instant Third Amended Complaint. (Doc. 34). Therein, Plaintiff alleges it is a medical provider which served P.M. (the "**Patient-Insured**") for cervicalgia, cervicobrachial syndrome, and cervical radiculopathy. (Doc. 34, ¶¶ 1, 13). After some alternative but ultimately unsuccessful non-surgical treatments, Plaintiff provided surgical care for the Patient-Insured on September 25, 2018. (*Id.* ¶ 13). The Patient-Insured maintained health insurance with Defendant UnitedHealthcare Insurance Company through his employer, and the Patient-Insured provided the relevant insurance plan documentation (the "**Plan**") to Plaintiff to cover his care. (*Id.* ¶¶ 1, 4, 6, 10, 39–40; Doc. 34-1). The Plan's

2

underlying insurance contract is governed by ERISA. (Doc. 34, ¶¶ 10–12; Doc. 34-1). Prior to surgery, Plaintiff obtained pre-surgery authorization for a medically necessary procedure from Defendant. (Doc. 34, ¶ 11). Moreover, "at all material times," Plaintiff "was the authorized representative of" the Patient-Insured with regard to the Plan as the Patient-Insured assigned his benefits under the Plan to Plaintiff. (*Id.* ¶¶ 4, 10–11).

In addition, Plaintiff alleges non-party Preferred Medical Claim Solutions ("**PMCS**") secured from Plaintiff on behalf of Defendant a separate repricing agreement for discounted billing rates involving these two entities (the "**Repricing Agreement**"). (*Id.* ¶¶ 2–3, 15–17, 23, 41, 43). The Repricing Agreement established a pre-set reimbursement rate formula with some conditions. (*Id.* ¶¶ 23, 32, 37, 41, 44).

After the conclusion of care for the Patient-Insured, Plaintiff submitted a corresponding claim for $193,348.00 (the "**Claim**") to Defendant. (*Id.* ¶¶ 15, 22, 27, 45). Defendant made a partial payment of $46,164.46 to Plaintiff based on the Claim, which referenced the Plan's Group Number and Group Name. (*Id.* ¶¶ 24–26; Doc. 34-6, pp. 2–3). Plaintiff alleges that Defendant's partial payment of its Claim does not violate the Plan's underlying contractual terms; instead, the partial payment violates the Repricing Agreement, which if followed would have yielded payment of around $162,416.80. (*Id.* ¶¶ 2–3, 15–17, 23, 33–37, 43–45). As such, Plaintiff seeks at least $116,252.34 in compensatory damages for Defendant's alleged breach of the Repricing Agreement. (*Id.* ¶ 46). Plaintiff alleges the same

3

three state law claims brought in the Second Amended Complaint to remedy the partial payment of its Claim. (*Id.* ¶¶ 39–67). In its Order dismissing the Second Amended Complaint with leave to replead, the Court stated:

> Plaintiff might be able to allege an independent basis for its state law claims [as required to avoid ERISA preemption in this context]. Namely, the Repricing Agreement allegations, when interpreted in the light most favorable to Plaintiff, may establish an independent basis for suit that is separate and distinct from the Plan. Plaintiff further alleges, however, that a "Reasonable and Customary Charges" analysis under the Plan "squares with what" the Repricing Agreement established as a rate of payment. If Defendant's alleged underpayment connects to the Plan as it somehow is not a "Reasonable and Customary Charge"—even if one that simply "squares with" the Repricing Agreement—it is unclear to the Court how the Repricing Agreement is "separate and distinct" or "completely different" from the Plan. Moreover, Plaintiff further alleges that Defendant failed to comply with the "pre-suit remedies process (which such pre-suit mechanisms ERISA designed to try to avoid lawsuits like this)" as Plaintiff attempted to ascertain how Defendant arrived at its adjusted Claim payout amount, so the Court is at a loss to understand why Defendant is both obligated to comply with ERISA's document production requirement due to inquiries regarding the Claim and yet Plaintiff's cause of action is somehow "separate and distinct" from the ERISA Plan. Nevertheless, Plaintiff may be able to clarify this ambiguity by amending the complaint, so Counts I-III are due to be dismissed without prejudice. The Court cautions Plaintiff and its counsel that any re-pled claims must establish a factual basis for its contractual claims which are independent of the Plan.

(Doc. 31, pp. 6–7) (citations omitted). Defendant now moves to dismiss the Third Amended Complaint for failure to state a claim, once again arguing that Plaintiff's claims are preempted and that Plaintiff has failed to remedy the deficiencies previously outlined by the Court. (Doc. 38). After Plaintiff's response in opposition (Doc. 39), this matter is ripe for review.

## II.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.  DISCUSSION

While Plaintiff has altered its pleading to remove some of the allegations which subjected Plaintiff's claims to ERISA preemption in the Court's previous Order, Defendant points out that the exhibits properly attached and incorporated by reference tell roughly the same story as previously alleged. (*See* Doc. 31; Doc.

34; Doc. 39, p. 2). Undoubtedly, "[a] court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). However, when the complaint is appended with exhibits and attachments incorporated by reference and when those "exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)[2] ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c) . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (internal citations omitted)).

Additionally, Plaintiff overloads the Third Amended Complaint with improper legal argumentation and anticipatory hedging. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005) ("legal conclusions masquerading as facts will not prevent dismissal"); *Chevy Chase Bank, F.S.B. v. Carrington*, 2010 WL 745771, at *4 (M.D. Fla. March 1, 2010) (stating that "[h]uge swaths of the [complaint] are improper irrespective of their relevance, consisting

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

of lengthy legal arguments, case citations, and quotations from treatises-material proper in legal memoranda, but almost never proper in a complaint"); FED. R. CIV. P. 8(a), (d) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim," and "[e]ach allegation must be simple, concise, and direct."); (*see e.g.*, Doc. 34, ¶¶ 11–12). The Court has already warned Plaintiff's counsel regarding similarly argumentative pleadings. *See Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, No: 6:22–cv–127, (Doc. 28, pp. *7–9) (M.D. Fla. June 17, 2022). When all this improper pleading noise is edited out and when the remaining well-pled allegations are viewed in the light most favorable to Plaintiff, the Court nevertheless agrees with Defendant that Plaintiff's state law claims are preempted because they all "relate[] to" the administration of a self-funded health plan and are therefore foreclosed by ERISA's express preemption provision in 29 U.S.C. § 1144(a). (Doc. 38, pp. 2–20).

29 U.S.C. § 1144(a) provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter *relate to any* employee benefit plan." (emphasis added). The statutory text "relate to" is "given its broad, common-sense meaning, such that a state law 'relates to' a benefit plan in the normal sense of the phrase—that is, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *see also Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006). "A party's state law claim 'relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay [ERISA] benefits." *Garren v. John*

7

*Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (citation omitted). At the same time, conduct independent of an ERISA plan can be "too tenuous, remote, or peripheral" from the plan to be defensively preempted, including some conduct giving rise to medical providers suing plan or claims administrators. *See Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533–34 (1994) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)); *see also In re Managed Care Litig.*, 595 F. Supp. 2d 1349, 1357 (S.D. Fla. 2009) (noting ERISA does not defensively preempt independent causes of action by medical providers against plan insurers if they arose independently from an ERISA plan). For example, a medical provider's suit against an insurer or claims administrator can escape ERISA preemption when there is an independent basis for the claim such that an insurer or claims administrator's "failure to pay for the medical services violates a *completely different non-ERISA* agreement" which is "*separate and distinct* [] from the ERISA plan." *Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*, 465 F. Supp. 3d 1211, 1222 (M.D. Fla. 2020) (emphasis added).

At bottom, Defendant's failure to pay does not flow from an agreement which is "separate and distinct" or "independent" from the Plan. The Court allowed repleader because the Repricing Agreement itself is not an ERISA-governed contract, so it was at least possible that Plaintiff could clarify the ambiguous relationship between the Repricing Agreement, the Plan, the Claim, and the alleged shortfall. (Doc. 31, pp. 6–7) (citations omitted). While Plaintiff has tailored

its pleadings to the Court's Order, the exhibits incorporated by reference remain the same and contradict Plaintiff's conclusory allegations to the contrary.

To start, Plaintiff filed the Claim on behalf of the Patient-Insured under the Plan, an ERISA-governed health insurance plan. (Doc. 34, ¶¶ 10–12; Doc. 34-1). Plaintiff obtained pre-authorization for the medical care from Defendant under the Plan. (Doc. 34, ¶ 11; Doc. 34-4). Despite Plaintiff's conclusory allegation that this pre-authorization puts the issue of payment amount outside the reach of ERISA, the pre-authorization paperwork incorporated by reference as an exhibit makes clear that Defendant is not conceding the payment amount as the same will be determined in part by the medical provider's status as an in-network or out-of-network provider, as well as "the guidelines and policies in place when services were provided" under the Plan.  (Doc. 34, ¶¶ 11–13; Doc. 34-4, pp. 3, 5) ("This approval does not guarantee the [P]lan will pay for the service when, for example, . . . [p]ayment of covered services depends on other [P]lan rules."). Upon receipt of the Claim, Defendant issued its partial payment and explained it was not paying out the fully charged amount because Plaintiff is not an in-network provider under the Plan.  (Doc. 34, ¶¶ 11–13; Doc. 34-6, p. 3) ("This payment has been reduced by the amount that is above the eligible expense amount for out-of-network services under your plan in your area."). Furthermore, the Plan states that reimbursement for any claims or charges made for services rendered by "Out-of-Network providers" is "limited to the Reasonable & Customary charge, as determined by [Defendant]." (Doc. 34-1, p. 50).

Plaintiff alleges that the partial payment of the Claim does not violate the ERISA-governed Plan but instead the Repricing Agreement and its pre-set reimbursement rate formula. (Doc. 34, ¶¶ 2–3, 15–17, 23, 37, 41, 44). Plaintiff further alleges that the Repricing Agreement was secured on behalf of Defendant by PMCS as Defendant's agent. (*Id.* ¶¶ 16, 24). However, the Repricing Agreement incorporated by reference states that the reimbursement rate formula applies to "all claims processed by PMCS." (Doc. 34-3, p. 2). Nowhere does Plaintiff allege PMCS ever processed its Claim; instead, Plaintiff expressly alleges it submitted the claim to Defendant for processing. (Doc. 34, ¶ 15) ("[Plaintiff] made a claim to [Defendant] relating to payment of [the Claim's billed charges]."). Even assuming the claim was also processed by PMCS, the Repricing Agreement expressly states that payment to Plaintiff will ultimately be an "Adjusted Amount" based on subtracting the "patient co-pay, deductible, co-insurance and *non-covered amounts*." (Doc. 34-3, p. 2) (emphasis added). In this case, the Repricing Agreement does not provide a method to determine the "non-covered amounts." (*Id.*). Instead, the only way to determine what a "non-covered amount" is by reference to an insurance plan's terms under which any given claim is made—here, the Claim made under the terms of the Plan. And as already noted, the Plan makes clear that out-of-network charges or claims will be limited to a "Reasonable & Customary" adjustment. (Doc. 34-1, p. 50). As such, the Court finds that, as pled, the Repricing Agreements are not plausibly "separate and distinct" from an

10

ERISA-governed agreement and accordingly "relate to" the Plan.[3] Plaintiff's state law claims are thus preempted by ERISA.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 38) is **GRANTED**;

2. The Third Amended Complaint (Doc. 34) is **DISMISSED WITH PREJUDICE**; and

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff and thereafter close the file.

**DONE AND ORDERED** in Orlando, Florida on July 14, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

[3] Moreover, in communications with Defendant prior to suit, Plaintiff expressly notes its belief that Defendant is subject to a statutory penalty under ERISA if Defendant fails to comply with any potentially applicable document production requirements. (Doc. 34, ¶ 28; Doc. 34-8, p. 3).